United States District Court
District of Massachusetts

```
_____
                            )
SpeeDee Worldwide, LLC, et al.,  )
                            )
         Plaintiffs,        )
                            )      Civil Action No.
         v.                 )      24-CV-10274
                            )
Gerard Toppa, et al.,       )
                            )
         Defendants.        )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs SpeeDee Worldwide, LLC ("SpeeDee Worldwide") and Grease Monkey International, LLC, ("Grease Monkey") (collectively, "plaintiffs") move for a preliminary injunction against defendants Gerard Toppa, Carrie Toppa and J&C Automotive, Inc. (collectively "defendants") to enforce a non-compete clause in a franchise agreement between the Toppas and SpeeDee Oil Change & Tune Up of New England, Inc. ("SpeeDee New England") and to protect against misuse of their confidential business information and trade secrets. The Court will allow plaintiffs' motion for preliminary injunction (Docket No. 6) and enter a preliminary injunction order accordingly.

-1-

I.     **Background**

On February 1, 2024, plaintiffs filed a three-count complaint against defendants for 1) breach of contract, 2) injunctive relief and 3) misappropriation of trade secrets pursuant to the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, et seq.

SpeeDee Worldwide is an automobile maintenance and repair franchise that previously operated through a regional sub-franchisor, SpeeDee New England, in the New England region.  In 2009, SpeeDee of New England and defendants Gerard and Carrie Toppa ("the Toppas") entered into a franchise agreement.  The Toppas operated a franchise location at 740 Brockton Ave., Abington, MA.[1]  The agreement was later assigned by SpeeDee of New England to Grease Monkey.  SpeeDee Worldwide is a third-party beneficiary of the agreement.

The complaint alleges that pursuant to the 2009 franchise agreement, defendants agreed to protect SpeeDee Worldwide's confidential information and trade secrets and not to compete with the franchisor upon termination of the agreement. Specifically, the agreement prohibits defendants from using or disclosing confidential information of the franchisor and from engaging in competitive conduct within 50 miles of the franchise

---

[1] The Toppas initially operated their franchise location in Brockton, MA but eventually relocated to Abington.

location for the duration of the agreement and two years thereafter.

According to the complaint, on September 29, 2023, defendants notified SpeeDee WorldWide that they intended to terminate the franchise agreement at the end of 2023.  Even before that date, the Abington franchise location purportedly began displaying "J&C Automotive" signs and employees began to wear J&C Automotive-branded uniforms.  In October, 2023, SpeeDee Worldwide informed defendants that they were in violation of the franchise agreement and demanded that they cease and desist.

On January 1, 2024, or the first day after the termination of the agreement, defendants allegedly launched a new business Facebook page for J&C Automotive and posted,

> We have left the franchise world. . . . . We need help if you are a current customer please leave us a review to help us get this page up . . . .

Plaintiffs contend that post and others were designed to solicit former customers of the SpeeDee franchise.

Since January 1, 2024, the Toppas have been operating J&C Automotive as an independent automotive repair and maintenance business at the same location in Abington.  According to the affidavit of SpeeDee Worldwide employee Mark Gadoua, he visited J&C Automotive on January 2, 2024, and found a fully operational business where mechanics were repairing vehicles and working on struts and brakes.  During that visit, Mr. Toppa purportedly

asked if SpeeDee planned to sue him and suggested that he had preemptively retained an attorney.

## II.  **Motion for Preliminary Injunction**

### A. Plaintiffs' Motion

Plaintiffs move for a preliminary injunction that 1) enforces the non-compete covenant in the franchise agreement, 2) enjoins defendants from utilizing or disseminating plaintiffs' confidential and proprietary business information and trade secrets and 3) restrains defendants and their associates from contacting any current or former customers of plaintiffs.

Plaintiffs first argue that a preliminary injunction is warranted because they are likely to succeed on the merits of their breach of contract claim given that defendants violated the non-compete covenant.  J&C Automotive purportedly offers the same services at the same location.  Plaintiffs insist the non-compete covenant protects SpeeDee's confidential strategic and training materials as well as the goodwill of its customers.

Plaintiffs also contend that they are likely to succeed on their trade secrets claim because their training and marketing materials, customer list and goodwill constitute trade secrets and defendants could not have been immediately operational after their franchise agreement terminated without the confidential information they misappropriated from the franchisor.

Plaintiffs aver that they will suffer irreparable harm without an injunction because 1) the franchise agreement states that any breach of the non-compete agreement would cause irreparable harm, 2) irreparable harm in a trade secrets case is presumed upon a showing of a likelihood of success on the merits and 3) it is likely that former customers will confuse the new automotive business with the preceding franchise.

Finally, plaintiffs maintain that, while an injunction will result in hardship for the defendants, that harm was a predictable consequence of their breach.

### B. Defendants' Opposition

Defendants respond that a preliminary injunction is not warranted because 1) enforcement of the non-compete covenant does not protect a legitimate business interest that is reasonably limited, 2) plaintiffs have only incurred monetary damages and 3) a balancing of the equities requires denial.

Defendants do not deny that they continue to operate an automotive repair business at the Abington location.  They contend instead that the non-compete covenant does not protect a legitimate business interest because it limits ordinary competition.  They cite RE/MAX of New Eng., Inc. v. Prestige Real Estate, Inc., in which another session of this Court held that a preliminary injunction was not warranted where the non-compete provision in a real estate franchise agreement

improperly limited ordinary competition. 2014 WL 3058295, at *2-3 (D. Mass. July 7, 2014) ("RE/MAX").  Defendants insist that they returned all business materials and that plaintiffs have failed to identify any trade secrets.  They claim that matters of public knowledge or general knowledge in an industry cannot constitute trade secrets.

Defendants also deny that plaintiffs have suffered any irreparable injury.  They cite Grease Monkey Int'l v. Ralco Lubrication Servs., in which another session of this Court denied a motion for preliminary injunction when Grease Monkey sued to enforce a non-compete covenant after determining there was no irreparable harm because any financial injury was compensable. 24 F. Supp. 2d 120 (D. Mass. 1998).

Defendants finally stress that a balancing of harms weighs heavily in their favor.  The Toppas, their daughter and son all are employed at the shop and purportedly do not possess other employment skills.  The couple rents their home, lease two vehicles and support J&C's small business loan.  They contend that their ability to

> earn a living in [their] chosen field would be
> extinguished or . . . substantially curtailed if
> [they] were enjoined.

Id. at 125.

III. **Analysis**

   **A. Legal Standard**

   When seeking a preliminary injunction, a plaintiff must establish 1) likelihood of success on the merits, 2) likelihood of irreparable harm in the absence of preliminary relief, 3) that the balance of equities weighs in his favor and 4) that injunction is in the interest of the public. Winter v. NRDC, 555 U.S. 7, 20 (2008). The first two factors are the most important. Together Emps. v. Mass Gen. Brigham Inc., 32 F.4th 82, 85 (1st Cir. 2022).

   **B. Application**

      **i. Success on the Merits**

   In Massachusetts, a non-compete agreement is enforceable only if

      it is necessary to protect a legitimate business
      interest, reasonably limited in time and space, and
      consonant with the public interest.

Boulanger v. Dunkin' Donuts, Inc., 442 Mass. 635, 639 (2004). The parties agree that the franchise agreement contains a non-compete provision and that it applies only so long as it is enforceable. Here, plaintiffs have demonstrated that they have a legitimate business interest in protecting their trade secrets and the goodwill of their customer base. As franchisees, defendants received confidential operating manuals, business and mechanic training materials and customer lists. They were

-7-

invited to confidential conventions and regional franchise meetings where outsiders had to sign non-disclosure agreements. Even after defendants returned all the confidential materials they received as franchisees, they continued to derive benefit from those materials, trainings and meetings.

Defendants rely on the RE/MAX decision, but that case is distinguishable from this one.  In RE/MAX, another session of this Court found that the non-compete provision in that case was designed to curtail ordinary competition in part because there were no trade secrets involved. RE/MAX, 2014 WL 3058295, at *3. It compared the facts in that case, where the defendants only had access to general business strategies, with Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635 (Mass. 2004), in which a defendant had "access to operating manuals, recipes, marketing and promotion strategies," among other things. Id. at *2-3. Here, plaintiffs assert that defendants had access to business and technical training as well as other confidential written materials.  This case accordingly resembles Boulanger much more than RE/MAX.

The time (2 years) and geographic (50 miles) restrictions at issue also appear to be reasonable. See Aspect Software, Inc. v. Barnett, 787 F. Supp. 2d 118, 128 (D. Mass. 2011) (reviewing caselaw on multi-year non-compete terms).

Plaintiffs have also established that they are likely to succeed on the merits of their trade secrets claim.  To succeed on a misappropriation claim under the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq., a plaintiff must establish that

> 1) the information is a trade secret; 2) the plaintiff took reasonable steps to preserve the secrecy of the information; and 3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret.

Incase Inc. v. Timex Corp., 488 F.3d 46, 52 (1st Cir. 2007). Plaintiffs' confidential training materials and customer lists are trade secrets. See Parexel Int'l LLC v. Signant Health Holding Corp., 2023 WL 2938073, at *8 (D. Mass. Apr. 13, 2023) (customer lists and client pricing information are trade secrets); Optos, Inc. v. Topcon Med. Sys., 777 F. Supp. 2d 217, 239 (D. Mass. 2011) (nonpublic customer list is a trade secret). SpeeDee submits that, among other things, it password-protected relevant training material, maintained confidential customer lists and required outside parties who attended regional franchise meetings to sign non-disclosure agreements. Plaintiffs are therefore likely to establish that they took reasonable steps to protect the secrecy of the confidential information.

Plaintiffs are also likely to show that defendants used improper means to obtain those trade secrets by violating their contractual duties as franchisees.  "As a matter of law, an

individual who breaches contractual duties to obtain trade
secrets has used improper means." Id. at 240.  Even if
defendants returned all confidential materials before they
terminated their franchise, they could not have commenced the
operation of an independent business so quickly without the
benefit of plaintiffs' trade secrets. See C.R. Bard, Inc. v.
Intoccia, 1994 WL 601944, at *3 (D. Mass. Oct. 13, 1994) (even
if defendant retained no confidential documents, "he could not
and did not leave behind his special knowledge of plaintiff's
operation, and . . . will inevitably draw upon that knowledge"
when competing).

### ii. Irreparable Harm

Plaintiffs have also shown a likelihood of irreparable harm
in the absence of an injunction.

> When a plaintiff demonstrates likelihood of success on
> a misappropriation of trade secrets claim, it need not
> prove irreparable injury because such harm is
> presumed.

EchoMail, Inc. v. Am. Express Co., 378 F. Supp. 2d 1, 4 (D.
Mass. 2005).  That presumption applies here.

In any event, there are independent reasons to believe
plaintiffs would suffer irreparable harm without injunctive
relief.  Because J&C Automotive continues to operate in the
exact location where the franchise stood, customers are likely
to confuse J&C Automotive for a SpeeDee franchise location.

-10-

That poses a risk to the goodwill that plaintiffs have developed with their customers. <u>See</u> <u>Outdoor Lighting Perspectives Franchising, Inc.</u> v. <u>Home Amenities, Inc.</u>, 2012 WL 137808, at *2 (W.D.N.C. Jan. 18, 2012

Defendants reliance on <u>Ralco Lubrication Servs.</u> is misplaced.  There, Grease Monkey could not establish a likelihood of success on the merits or irreparable harm because the individual franchisee was not personally obligated to comply with the non-compete covenant. <u>Ralco Lubrication Servs.</u>, 24 F. Supp. 2d at 124-25.  Here, Carrie and Gerard Toppa signed the franchise agreement in their individual capacities and are therefore bound by it.

### iii. Balance of Hardships and Public Interest

Defendants will likely experience some hardship if the Court enjoins them from operating J&C Automotive.  Gerard and Carrie Toppa are both 50 years old.  The couple and two of their children work in the business.  Defendants submit that Gerard Toppa has worked as a mechanic for approximately 30 years and possesses limited outside work experience.  Defendant Carrie Toppa previously worked as a teacher but is no longer licensed and now manages the back office of J&C.  It is not clear how the Toppas will earn a living outside the automotive industry.

That hardship is, however, a "predictable consequence of [their] breach and misconduct." <u>Get in Shape Franchise, Inc.</u> v.

-11-

TFL Fishers, LLC, 167 F. Supp. 3d 173, 203 (D. Mass. 2016)
(cleaned up).  Plaintiffs allege that defendants chose to
terminate the franchise agreement and knowingly violated the
agreement after being reminded of their obligations.  Mr.
Toppa's purported questioning of Mr. Gadoua just after the
termination about the possibility of a lawsuit illustrates that
defendants understood they were in breach of the franchise
agreement.

Plaintiffs, meanwhile, will likely suffer some hardship in
the absence of a preliminary injunction.  Even though plaintiffs
have other nearby franchise locations, they are likely to lose
customers to J&C Automotive if it continues to operate as is.
Other franchisees may also assume that they can breach their
franchise agreements and noncompete covenants without
consequence.

Finally, "[t]he public has an interest in the enforcement
of valid contracts." Id. (citation omitted).  Given the limited
scope of the non-compete covenant, the public's interest in the
enforcement of the contract outweighs its countervailing
interest in unfettered market competition.

**ORDER**

For the reasons set forth above, plaintiffs' motion for preliminary injunction (Docket No. 6) is **ALLOWED**.  The Court hereby issues a preliminary injunction in the form attached hereto as Exhibit A.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  April 10, 2024